Mr. Carter, we'll hear from you first. May it please the Court, Adam Carter with the Employment Law Group on behalf of General Thomas Harwood. This Court remanded for a fact-finding, and all the District Court seems to have done is conclude that this Court already found that the job was equivalent and appropriate. But this Court wanted a fact-finding because the District Court hadn't done one and declined to do one. So the question now is, can an employer escape liability under USERRA and cut off damages by simply offering a vague job? Look at JA-193. That's the letter from Mr. Key, American Airlines lawyer, to me, saying he should go back to the military, he can do that if he wants, we'll employ him, there's no start date. All they say is that he's going to do something that's going to pay him like a pilot. But it doesn't say what he's going to be doing at all. Is it your contention that your client should be given a chief pilot position? It's my contention that he should be given the escalator position. We are outside USERRA as of October 22nd. The statute is clear, there's a thing called the escalator position. Quite familiar with it. My question is, ultimately, are you saying that he should be given this chief pilot position? I believe that he should be given the escalator position, and that's not the chief pilot position, it's the Boeing 737 captain out of New York. And he doesn't have his driver's license, if you will. That is of no moment. What do you mean? You mean he doesn't have his medical certificate? Yes, sir. The FAA clearance... So, it's like having a driver's license. It's like having a clearance from the FAA to fly. But that is of no moment under USERRA. The employer brings the veteran home, says, well... Back that up a little bit. Okay. What you're saying is you have to have this requirement under the FAA to have a medical certificate to be a pilot, but that is of no moment to USERRA. Does USERRA say you can be a pilot nonetheless? No. USERRA says you have to do four things to get reemployed. This panel, in fact, already determined that he should be reemployed as of September 1. The question now is, what is the escalator job that he's entitled to, and what does American have to do to get him qualified? And that's the point. Regulation 198B says that it restricts the employer from declaring the returning service member to be unqualified. Oh, sorry, son. You don't have your driver's license. You can't be a pilot here. That's not what they're allowed to do. They bring him in from the cold. They say, here's your paycheck. Here's your health benefits, and we will help you get that driver's license. That's—and American's position is, respectfully, they say, well, that's between you and the FAA. No, it's not. We're talking about the relationship between Harwood and American. They can help him get that. They can pay for it. They can pay for the medical appointments that are necessary. He's got this— It sounds untenable to me that the FAA would have a requirement for a pilot, which is a medical certificate. You're saying USARA would require American to put him in that position nonetheless. I'm just thinking, I mean, who wants to fly as a passenger with someone like that? And then what airline is going to take that level of responsibility or potential liability? I understand the— If you will. I understand the problem. But let me complete it, because obviously you don't, because you seem to be addressing something that, to me, I don't quite understand yet. You're saying, on the one hand, USARA requires it. I understand that. But there's another requirement. The FAA requires something in order for American— American does not— I would not want an airline, no one, anyone else to fly in contravention of what the FAA requires. It could lose its ability to fly, but also it has passengers to be considered. So I ask you, initially, is he ultimately seeking a chief pilot position? And I got your answer to be, no, that's not necessarily what— because that may not fit the escalator position. He just want a pilot position. Is that right? He wants an equivalent position after the escalator position. And let me clear up the confusion. When a pilot comes back from military duty, whether— let's say he didn't have the AFIT and he didn't have the medical condition. He still couldn't fly on day one. There are things called landing currency. There's training. There's classroom work. There's all sorts of things that he has to do to be up in an airline flying with passengers. And let's look at what actually happened. On January 25th, when he got back, he got his medical clearance. When do you think, Your Honor, he was actually flying passengers in service? Not until April. Do you know why? Because he had to get all this classroom work. He had to do a check ride. But that's not quite fair because as soon as he got his certificate, they hired him as a pilot. Correct. And the pilot anticipated he was flying. The preparation to the flying is what you're discussing. And that preparation is necessary for a pilot to do the classroom work and whatever. But what date was that? January 26th or something. That's right. He was hired as a pilot. And all paid. That's the point. You don't need your FAA certificate to get paid, to get in the classroom, to learn how to fly a 737, and to get ready for when the clearance comes. And that's my point, is that you bring the veteran in from the cold. You don't stiff arm them and say, no, sir, you don't get to work. You're saying that the medical certificate was inevitable? It was very likely, given the condition. And it is something that Americans should have had to pay for the work. He should have had to pay for them. Where does it reach the level of when, OK, you're not going to get a medical certificate because the condition is so severe, it won't happen, to become very likely to, yes, you'll get it. What makes you think this is very likely? And that they should act upon a very likely proposition? And why not just wait until you get it, and then go through this training, and what's necessary? Again, USERRA requires that if you meet the FORA requirements, you get your job back. And they can't say, you can't come back to work here. And what we're talking about is the position that he should have been in. This panel asked the district court- Just a minute. We concluded in our last opinion that he could not come back to his job. USERRA says it has an alternative if he's disabled. And that's what we relied on. A3. Yes, sir. And so he was disabled at that point. He could not fly. And as Judge Winn has pointed out, we don't have to guess whether the medical conditions can be overcome by the FAA or not. So he proposed four jobs for acceptance. And they created a job of similar nature, with similar pay, and put him there until he got a certificate. And then they hired him as a pilot. You asked the district court to do a fact-finding whether that job was- Just for damages. Just for damages. That's right. And the district court did not do that fact-finding. And here's the other thing, just to that point, Your Honor, this idea of they requested from us. I mean, the lawyers were just ideating here. What could he do? What would he be interested in doing? That's not the veteran's job. The veteran comes from the military. He doesn't know what all the jobs are that American has. It's up to American to- When they proposed the job, they said it was the same pay and status, and they thought it was appropriate. And he turned it down. But then he accepted that job. I didn't see anywhere where he said that's an inappropriate job, or it wasn't equivalent. He accepted it. Of course, the next day, he was hired as a pilot. But it doesn't seem like that was an issue below. The issue for below was whether he should be paid that interim period of time. And the district court made no findings of fact, despite this court's remand. And it was an error for the district court to put the burden on Harwood. Mr. Harwood doesn't have the burden. This is a rights act. They are strictly liable. The district court, with respect, said, I'm not convinced. I'm not convinced that the jobs aren't equivalent. The only evidence that the district court had was General Harwood's affidavit. It didn't conduct an evidentiary hearing. And to this day, American Airlines hasn't paid the money that even they say they owe. And so that issue before us. Well, I would think that as soon as the judgment's final, they'll pay, don't they? They haven't paid what we all agree they owe. But my point with respect to the equivalency of the position is the district court made no findings with respect to status, with respect to his joint collective bargaining agreements. When was the start date? Look at JA193. Is there a start date? Is there a direction of who he's supposed to go report to? Is there anything about his bargaining rights? What happens, in fact, to Judge Wynn's point, what happens when he does clear FAA waivers? And they brought him back to this position in Dallas. He now says, I want my pilot position. And American says, no, no, no, you've got this equivalent position. Now, we're not going to put you in that. We don't know at this point. If he accepts this job, to Judge Niemeyer's question, if he accepts this job, what's to say that they can't keep him there? His rights, as for you, Sarah, have to do with the escalator position. And that was what he was intent on. The fact is that when his wife wasn't well and he needed the better American Airlines benefits, that's what caused him to pick up the phone, call. And then there was a little bit more play about what the job was, what it would involve, the fact that he could go to Dallas and get a ticket to get there. None of those things are set forth here. Let me just say a word about the attorney's fees. Before I close, it is well-settled law that the attorney's fees should be at current rates. For the district court to, and the late, great Rick Seymour, who worked on this case and who billed on this case, the idea that someone of his stature would be bucked down to $450 an hour. And by the way, who's getting cheated out of that extra hour? Not the lawyers, Your Honor, my client. My client paid that $450 when the bill was due. He's been paying an hourly client all along. And the time value of money on attorney's fees is at current rates. And the current rates that were not applied by the district court, the district court said that it was going to apply $450 an hour for principles rather than the Vienna Metro Matrix that had been accepted. And those hours were at $450. And the fact that they are paid shows that that's the market rate, but it should be at current rates. That's what the time value of money is. We don't get interest awarded on an attorney's fee petition. So that was also an error. I'll reserve the rest of my time unless the court has extra questions. Well, let me ask you, what would you have us do? I would have Your Honor remand back to the district court and ask for a fact finding to hold an evidentiary hearing. The district court had ordered cross briefs of 20 pages. What facts do you want the court to find? Well, I want the court to find that what was the job that Mr. Harwood was going to be going and what was the evidence of what was there at the time and all of that. And then decide, okay, is that equivalent to a 737 pilot in New York? Yes or no. And if it is yes, then okay. And then if it is no, then award the damages for not having done that before. This is a communication lawyer to lawyer. Nothing stopped American from calling up Harwood and saying, get down here to Dallas. We're going to pay you. We're going to keep your benefits intact. They didn't do any of that. All right. Thank you, Your Honor. Sarah. Good morning, Your Honors. And may it please the court, Jason Serra on behalf of American Airlines. I'll start with the suggestion that the district court in this case didn't make the fact finding that this court required of it on remand. The district court specifically found that the position that American offered came with the same pay and benefits that Harwood received as a pilot plus equal status within the organization. That's the fact finding this court remanded for. And that's the fact finding the district court made. And that's at JA 834. With respect to Mr. Harwood's suggestion that there needed to be an evidentiary hearing, Mr. Harwood did not request an evidentiary hearing on remand to the district court. And on top of that, there weren't any disputed facts that would justify an evidentiary hearing. Everything in this record, I mean, it speaks for itself. It's not as if there needs to be testimony to determine what American offered, what it said about the benefits, about the pay, et cetera, et cetera. So I think the suggestion that there needs to be a remand for an evidentiary hearing or the district court didn't do what this court suggested is plainly incorrect. I've heard Mr. Harwood argued that American should have rehired him into a pilot's position, put him on the payroll, and then transfer him, I suppose, to some other job later if he didn't ultimately receive a waiver from the FAA. But I think this court actually already resolved that contention in its prior opinions. But Jeanne Meyer, you asked a question about this. But the court said at page 417, it's clear from the record that Mr. Harwood was not qualified at the time you presented for reemployment for his escalator position as a pilot. The court also said that returning service members must be promptly reemployed in an appropriate position for which they are qualified. Well, I thought the question before the district court would be, because at the time he couldn't get clearance to fly. So the question was, if he can't be hired as a pilot, what constitutes an equivalent position? Is that what the court did? That's exactly right. The district court evaluated whether the position offered on October 22, 2015, in the flight technical operations group in Dallas was an equivalent position. Or rather, the nearest approximation to Mr. Harwood's pilot position under 4313b, subsection b. That's exactly what the district court did. And the district court found that it was equivalent. And the court found that it was the nearest approximation to an equivalent position, precisely because, as I said earlier, it made fact findings that the position came with the same pay and benefits plus equal status within the organization. This court will find the facts supporting the district court's fact finding at page 490 of the record, page 367 of the record, and page 299 of the record. And I submit there's no showing here of clear error. And that's the standard of review for that finding, much less any error at all. The October 22nd letter, insofar as the question of seniority, doesn't seem to mention that. I believe the October 22nd letter said it would be appropriate for his status and came with the same compensation that he would receive as a pilot. Correct. I don't think it mentioned seniority in particular. I think those details were later fleshed out. I think ordinarily that seniority is something like, for example, Mr. Harwood was a pilot at seniority level 7, and he would have become a pilot seniority level 9 on return from his military service. You know, it affects bidding for what type of flights the pilot's going to get. But this was an entirely different job. I mean, it was a change of position. He went from a pilot to a non-pilot. So I'm not entirely sure how that type of seniority even translates in this case. Mr. Harwood's suggestion, perhaps, is that he needed to get the rights under the pilot CBA. I mean, that may be the argument about seniority. And if that's the argument, I would direct the court to J.A. page 490, where American explained that Mr. Harwood was going to receive the same types of rights as he would have received under the Joint Collective Bargaining Agreement. Well, I was just mentioning that because the USERRA does require that there's some equivalency of the seniority. And that just seems it's not that clear in that letter. What about the accrued sick leave benefits? Wasn't he entitled to that? I didn't see that in there either. Right. So that, Your Honor, I would direct the court to page 490. This is the second letter from American where it spelled it out in greater detail. This, I think, dovetails with Mr. Harwood's argument that the offer was not sufficiently specific. And of course, the record actually shows that he would have received, for example, accrued sick leave benefits. But the argument, I think, is that the October 22 letter was too vague or not sufficiently specific. And I think there are at least three reasons, if not more, to reject that argument in this case. And the first is that American offered Mr. Harwood exactly what he asked for. As Judge Niemeyer noted, there was a letter from Mr. Harwood's counsel on October 1st that said, here are four jobs that we're interested in. One of them was flight operations within the flight group in Dallas. And that is precisely the position that American offered. The second point, as Mr. Carter referenced, is this was a conversation between attorneys. It was not a conversation between an individual unrepresented and his or her company. This was a conversation between attorneys. And so the suggestion that there weren't enough specifics in the letter rings a little bit hollow to me. Because if Mr. Harwood needed more specifics to figure out whether or not to take the job under USERRA, all he had to do was ask. But instead, what we have in this case, respectfully, is we have the record shows that Mr. Harwood declined the job on advice of counsel and then turns around and sues American and says the offer is not qualifying, precisely because there weren't specifics when, of course, Mr. Harwood was represented by counsel and simply could have asked. And had he asked, you know, he later did ask in January of 2016, had he asked, he would have received the same letter that American sent back, which said, here are all the benefits that you would get, sick leave, relocation, pay, pension, et cetera, et cetera. And there would be no argument in this case about specificity. So I think with all due respect, it's a little bit of a gotcha. The third point, of course, is in terms of like the scope of job responsibilities. American was creating a brand new position from scratch for Mr. Harwood. He was a pilot. He was qualified to be a pilot, but for the medical certificate. And it was creating a desk job for him. And this is a highly unusual circumstance. So as Mr. Hansen, the director of flight operations testified in this case, what American wanted to do was confer with Mr. Harwood about the scope of the position. I mean, it really, truly was making a position here from scratch. But of course, Mr. Harwood did not confer with American. He simply rejected the job on advice of counsel. And then my last point, this is the fourth point, is I think this argument, as well as barred by the mandate rule, as I understand Mr. Harwood's argument, it's that the October 22nd job offer did not qualify under USERRA, even if the job came with the same seniority status and pay. So the job offer itself was defective. But this court's remand order told the district court to evaluate seniority status and pay. And that would, of course, have been pointless if the offer was simply defective because it lacked specifics. So I think for those four reasons, this court should reject the specificity argument. MR. HANSEN Does that go to your opposing counsel's argument that, well, it didn't have to be made a pilot right away, but American should have started the training and began whatever procedures in anticipation that he very likely would get this medical certificate? MR. GOLDSTEIN Right. So I think that argument certainly has the benefit of hindsight. At the time, nobody knew if Mr. Harwood would or would not receive the waiver. But I think this court actually already resolved that question. The argument from Mr. Harwood is you should have hired me as a pilot and then let me train until the FAA made a decision at some point in time. At the time, nobody knew when that would be or what the decision would be. But this court said American was not obligated to hire Mr. Harwood as a pilot. So I think that that argument is simply barred by this court's prior opinion, not just the mandate rule. I think this court expressly rejected the argument that American was required to rehire him as a pilot and then train him. And if this court was to go any further than its prior opinion and just look at the merits of the argument, I think it would reject it. It should reject it as well. And the reason is when a company is rehiring an employee under USERRA, they need to be qualified to perform the job. And Mr. Harwood was not qualified to perform the job of pilot. So even if they had rehired him as a pilot and trained him, it still would be true that he was not qualified. The training wouldn't have affected his qualifications in terms of the key disqualifying feature, which was the first class medical certificate, as this court held in its prior opinion. I think any, I also heard Mr. Harwood's attorney argue that American did not make efforts to reasonably accommodate Mr. Harwood's disability. I think that argument is also barred by the mandate rule. There was extensive argument before the panel last time about that. And this court remanded only for a finding on the seniority status and pay question, which the district court did. And Mr. Harwood's argument again, just like with the specificity argument, is that those findings were unnecessary or beside the point because American's offer was defective as a threshold matter because American did not first try to accommodate Mr. Harwood. So I think the court should reject that argument as well. If there aren't any other questions about the October 22nd, 2015 offer, and I'm happy to address any that the court might have, I will move briefly to attorney's fees. I think the court should affirm the district court's attorney's fee award in its entirety. What we have here is a routine exercise of discretion, not an abusive discretion. Mr. Harwood addressed one issue. I think he had, there are six in this case. I think they're adequately covered in the briefs, but he brought up one issue, which is that the district court should have compensated Harwood's counsel at current rates. And I wanna be very clear about the factual posture of that argument because I think it illustrates precisely why the argument is not meritorious. In the ordinary course, an attorney might perform work, say in 2015, 2016, and 2017, prevail or prevail in part, and then submit a fee petition in 2018. It would be reasonable in those circumstances, I agree in 2018 to say my work in 2015, 16, and 17 should be compensated at 2018 rates to account for cost of living adjustments and inflation. But that's not what happened in this case. Mr. Harwood's counsel didn't say I should be compensated at 2018 or 2019 rates for the work I did the past three years. What Mr. Harwood's counsel said is I should be compensated at 2011 rates because effective rates have remained static for the last seven years, six or seven years, 2018, 2019. So instead of saying district court, you should give me current rates to reflect cost of living adjustments and inflation, Mr. Harwood was arguing, effectively, there was no inflation. There were no cost of living increases. You should give me the rate in 2011. That's on the first fee petition. On the second fee petition, and this was after this court's remand decision, Mr. Harwood's counsel specifically asked for $450. He didn't ask for $450 trued up to 2020 or 2021 rates. He asked for $450. So the argument, as I understand it, is that the district court erred in not sua sponte, increasing the fee award. In the first fee petition, it was a request for 2011 rates. In the second fee petition, it was a request for the exact rate that the district court awarded. And I don't think Mr. Harwood can show an abuse of discretion, where the argument is the district court sua sponte had first had to ignore what Mr. Harwood's counsel was arguing for before the district court. And then sua sponte give a cost of living and inflation adjustment. I don't think in any way that that's an abuse of discretion. Had Mr. Harwood's counsel asked for the higher rates that he's complaining about now, perhaps there would be an argument, but that's just simply not what happened in this case. Again, he asked for 2011 rates in the first fee petition, and he asked for the exact same rate that he was awarded on the second fee petition. That's not an abuse of discretion. If this court has questions about other aspects of the fee award, I'd be happy to address it. Otherwise, I think it's adequately covered on the briefs and I would cede the rest of my time. Thank you, Mr. Zarrow. Thank you. Mr. Carter. Thank you, Your Honor. With respect to the equivalency position, and I heard my opponent say that it was the nearest approximation. Let's all be very clear. There is a three-step approach in USERRA. The first job is escalator. You have to bring him back to the escalator position and get him qualified for it. That didn't happen. The next level is equivalent position. Bring him back to equivalent position, get him qualified. That didn't happen here. Nearest approximation is the third rung. That isn't even before this court. So let's be clear. The next point that my opponent makes is this point about the mandate rule. With respect, this court asked the district court to make a fact-finding, which it didn't do. It simply referred back to this court's word, the word appropriate, that it was an appropriate position. So the district court took it as given that the October 22nd was appropriate. And Your Honor, Judge Wynn, your question about seniority is very insightful. That is a problem. You look at the JA-193, there's nothing about seniority. There's nothing about health benefits. There's nothing about a start date. There's nothing about the exact pay. And my opponent says, look at page 490. I agree. Can I ask you how we're to handle the letter where the American Airlines laid out all the specific benefits, pension rights benefits? I was just filling there, Your Honor. Thank you. That date of that letter is January 16th. That's 10 days away from January 25th, when all this went down. So if this court wants to- Before he accepted, right? I'm sorry? Before he accepted the position? It's just slightly before. It's 10 days- I know, but it's before. In other words, he could have rejected the position because it wasn't equivalent, but it's now being laid out, the details of his benefits, pension plan and this type of thing. And then he accepted that position, right? Quite so. And my point is that to cut off damages at the vague email from lawyer to lawyer as of October 22nd, and not to put it at least at January 16th in 2016 is a clear error. With respect to the attorney's fees- Let me ask you, because it was a lawyer to lawyer. Did you ask those details to be put in the letter? Well, the answer is no. Why? You're asking us now. You're very clear as to what should be in there. Why wouldn't you just say, you know, I want these details in the letter? And I'll tell you why. It was because of the initial- We were already outside of you, Sarah. I was already concerned that we were outside the law. The law says that my client doesn't have to do anything. He waits for the employer to bring him back. And they have not done that. Nothing stopped them from communicating with General Harwood and saying, General Harwood, come back to this position on this date. They didn't do that. I'm having some difficulty understanding. These are lawyer to lawyer. You're saying an offer is made by the company and you don't have to do anything except look at the offer and not make any suggestions. Don't say, well, you didn't mention seniority. You didn't put this in there. And you can just continue to go along, come to the court as though it's the first time ever the offer has been made in court. Your Honor, there is nothing in you, Sarah, about the employee having to engage with the employer about and finalize all the details. There's nothing in you, Sarah, that says you got to have lawyer to lawyer negotiations, period. You don't need the lawyers in it. So, but once you get them in it, you have something to do, don't you? I mean, you want to be paid this fee. What is the fee worth if you don't get in and negotiate and do something? Why, maybe that's too much if you're just going to say, well, just make an offering and we'll go to court and complain that you didn't put in this and you didn't put in that, but we never mentioned it. Is that fair? I mean, is that a fair statement? Well, Your Honor, ethically, I can't get into what was going on in the settlement discussions and all this. But the parties were having robust settlement discussions. I only ask that you ask for those things that you were talking, you're complaining about today that are not in the letter. I understand. I don't want you to get into the negotiation, but you seem to think those are important things. And I'm wondering, why didn't you ask for it and just before? Well, I'll just say it didn't occur to me that the idea that when Mr. Key wrote on January 6th- But I thought you, sir, required it. Why wouldn't it occur to you that seniority is something that you ought to have in the letter, that you ought to have accrued benefits? What do you mean it didn't occur to you? I don't understand that. It didn't occur to me that we were in talking about equivalency. We should have been talking about the escalator position and then re-employing him promptly. Remember, we didn't have the benefit of this panel's earlier decision. I notice I'm out of time. I just wanted to say one thing about attorneys' fees, if I may. And that is with respect to not asking for them. That's just not right. We did ask for the higher rate and the district court knocked it down from 563 to 450. Thank you, Your Honor. Thank you. We normally come down to Greek Council. That's one of the iconic practices that we have on our court. We're proud of it. And it's been done since the 1930s and it took the pandemic to suspend it for a little while. So we're going to continue to observe that type of protocol. But we do appreciate counsel's arguments. And when you come to court next time, we'll give you a firm handshake and make up for it. Thank you very much. And we'll proceed on to the next case.
judges: Paul V. Niemeyer, James Andrew Wynn, Henry F. Floyd